**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALARMAX DISTRIBUTORS, INC., | |
| Plaintiff, | |
| -against- | Civil Action No. 2:14-cv-01527-DSC/MPK |
| HONEYWELL INTERNATIONAL INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DEFENDANT HONEYWELL INTERNATIONAL INC.'S
<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

ARGUMENT ............................................................................................................... 4

    I.      LEGAL STANDARD ................................................................................. 4

    II.     PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM SHOULD BE DISMISSED ................................................................................................ 6

          A.     The Complaint Fails to Plead the Material Elements of a Section 2(a) Violation By a Vendor ................................................ 6

               1.     The Complaint Does Not Identify a Single Consummated Sale or Transaction with a Vendor, Contemporaneous or Otherwise .................................. 7

               2.     The Complaint Gives No Notice of Any Product Allegedly Sold At Discriminatory Prices ....................... 9

               3.     The Complaint Fails to Allege Any Actual Price Differential ............................................................................ 10

          B.     The Complaint Fails to Allege that Honeywell "Knowingly" Induced or Received Discriminatory Pricing ........................... 10

               1.     The April 2014 Honeywell Affidavit Is Insufficient to Show Honeywell's Knowledge of Competitor's Pricing ............ 11

               2.     The Complaint Seeks to Inhibit Honeywell from Seeking Lower Prices from Vendors and Offering Lower Prices to Customers .......................................... 14

    III.    THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ............. 15

          A.     Plaintiff Has Not Pled That Honeywell Breached the Settlement Agreement ..................................................................... 16

               1.     Plaintiff Has Not Pled a Breach of Section 5(b) of the Settlement Agreement Concerning Honeywell's Purchases from other Manufacturers .......................... 16

                    a.     Plaintiff Has Not Plead that Honeywell Received a Lower Price than AlarMax From Non-Honeywell Manufacturers ........................... 17

                    b.     Plaintiff Has Not Pled that Honeywell Knowingly Obtained a Better Price From Non-Honeywell Manufacturers ........................... 20

i

# TABLE OF CONTENTS
## (continued)

**Page**

2.    Plaintiff Has Pled No Facts Supporting a Breach of Section 5(c) or 5(d) of the Alleged Settlement Agreement .................................................................... 20

3.    AlarMax Has Not Pled a Breach of Section 4(b) and 5(a) of the Settlement Agreement ...................................... 22

4.    Plaintiff Has Not Pled A Breach of Section 5(f) .......................... 23

B.    AlarMax Has Not Pled a Breach of The Supply Agreement ................... 23

CONCLUSION .................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Sales & Serv. Co. v. Global Indus. Techs., Inc.*,
Civ. No. 97-0017, 2000 WL 726216 (S.D. Ala. May 1, 2000) .............................................11

*Alpha Pro Tech, Inc. v. VWR International LLC*,
984 F. Supp. 2d 425 (E.D. Pa. 2013) ...............................................................................15, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................... *passim*

*Assembly Tech, Inc. v. Samsung Techwin Co.*,
695 F. Supp. 2d 168 (E.D. Pa. 2010) .................................................................................5, 16

*Automatic Canteen Co. v. FTC*,
346 U.S. 61 (1953) ................................................................................................... 10-11

*Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins.*,
784 F.2d 1325 (7th Cir. 1986) .........................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................... *passim*

*Braun v. Wal Mart Stores, Inc.*,
24 A.3d 875 (Pa. Super. 2007)............................................................................................18

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)............................................................................................................25

*CAC Group, Inc. v. Maxim Group, LLC*,
No. 12 Civ. 901, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) .........................................17

*Callahan v. A.E.V., Inc.*,
Civ. No. 92-556, 1994 WL 682756 (W.D. Pa. Sept. 26, 1994).............................................6

*ChemTech International, Inc. v. Chemical Injection Technologies, Inc.*,
170 Fed. Appx. 805 (3d Cir. 2006)............................................................................. *passim*

*Christopher v. SmithKline Beecham Corp.*,
132 S.Ct. 2156 (2012)........................................................................................................19

*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*,
159 F.3d 129 (3rd Cir. 1998) .........................................................................................7, 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Dayton Superior Corp. v. Marjam Supply Co., Inc.*,
  No. 07-cv-5215, 2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) ................................13

*Feesers, Inc. v. Michael Foods, Inc.*,
  591 F.3d 191 (3rd Cir. 2010) ...............................................................................6

*Fresh N' Pure Distributors, Inc. v. Foremost Farms*,
  No. 11-C-470, 2011 WL 5921450 (E.D. Wis. Nov. 28, 2011)........................13, 22

*Goodloe v. National Wholesale Co., Inc.*,
  No. 03 C 7176, 2004 WL 1631728 (N.D. Il. Jul. 19, 2004) ...............................10

*Gorlick Distribution Centers, LLC v. Car Sound Exhaust System, Inc.*,
  723 F.3d 1019 (9th Cir. 2013) ............................................................................14

*Great Atlantic & Pacific Tea Co. v. FTC*,
  440 U.S. 69 (1979)...............................................................................................6

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
  No. 11 C 07834, 2014 WL 64657 (N.D. Ill. Jan. 8, 2014) ...................................9

*Lewis v. Allegheny Ludlum Corp.*,
  No. 11-1619, 2013 WL 3989448 (W.D. Pa. Aug. 2, 2013)...............................4, 5

*Marjam Supply Co. v. Firestone Bldg. Products Co., LLC*,
  Civ. No. 11-7119, 2014 WL 5798383 (D.N.J. Nov. 7, 2014) .........................11, 13

*Marmon Coal v. Eckman*,
  726 F.3d 387 (3rd Cir. 2013) .......................................................................... 18-19

*Monsieur Touton Selection, Ltd. v. Future Brands, LLC*,
  Civ. No. 06-1124, 2006 WL 2192790 (S.D.N.Y. Aug. 1, 2006)...........................9

*New Albany Tractor v. Louisville Tractor*,
  650 F.3d 1046 (6th Cir. 2011) ...............................................................................5

*Ocean State Physicians Health Plan Inc. v. Blue Cross & Blue Shield*,
  883 F.2d 1101 (1st Cir. 1989)...............................................................................8

*Pa. Human Relations Comm'n v. Alto-Reste Park Cemetery Ass'n*,
  453 Pa. 124 (1973)...............................................................................................18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Shionogi Ireland Ltd. v. United Research Labs., Inc.*,
No. 11-2861, 2011 WL 3610451 (E.D. Pa. Aug. 16, 2011) ....................................18

*Synthes, Inc. v. Emerge Medical, et al.*,
Civ. No. 11-1566, 2012 WL 4473228 (E.D. Pa. Sept. 28, 2012) ...........................10

*Taussig v. Clipper Group*,
13 A.D.3d 166 (N.Y. App. Div. 1st Dep't 2004)............................................... 20-21

*Taylor v. Unum Life Ins. Co.*,
No. 07-724, 2008 WL 144204 (W.D. Pa. Jan. 11, 2008) (Cercone, J.)..................22

*Textron Fin. Corp. v. Turbine Airfoil Designs*,
No. 09-cv-01714, 2010 WL 2265649 (M.D. Pa. Jun. 4, 2010) ........................... 5-6

*Tires Incorporated of Broward v. The Goodyear Tire & Rubber Co.*,
295 F. Supp. 2d 1349 (S.D. Fla. 2003) ............................................................... 9-10

*Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*,
530 F.3d 204 (3rd Cir. 2008) ...........................................................................7, 15

*Vaughn Medical Equipment Repair Service LLC v. Jordan Reses Supply Co.*,
Civ. No. 10-00124, 2010 WL 3488244 (E.D. La. Aug. 26, 2010) ......................8, 9

*Volvo Trucks N.A., Inc. v. Reeder-Simco GMC, Inc.*,
546 U.S. 164 (2006)........................................................................................ 7, 14-15

*W. Fuels-Illinois, Inc. v. I.C.C.*,
878 F.2d 1025 (7th Cir. 1989) .........................................................................12, 13

*Yagoozon, Inc. v. Fun Express, LLC*,
No. 13-595, 2014 WL 1922793 (D.R.I. Feb. 10, 2014).........................................10

*Yagoozon, Inc. v. Fun Express, LLC*,
No. 13-595, 2014 WL 1922797 (D.R.I. May 14, 2014) ........................................10

**Statutes**

15 U.S.C. § 13 *et seq.* ("Robinson-Patman Act").................................................. *passim*

15 U.S.C. §§ 1, 2 ("Sherman Act")...............................................................................2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Fed. R. Civ. P. 12(b)(6)..................................................................................................4, 5


**Secondary Sources**

Antitrust Law Developments (ABA Section of Antitrust Law, 7th Edition) ...............................23

FTC/DOJ Antitrust Guidelines for Collabrations Among Competitors (issued
April, 2000).........................................................................................................12, 15

Defendant Honeywell International Inc. ("Honeywell" or "Defendant"), by and through the undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint ("Compl.") filed by Plaintiff AlarMax Distributors, Inc. ("Plaintiff" or "AlarMax").

## PRELIMINARY STATEMENT

This action reveals nothing more than the latest effort of a company looking to the courts for protection from competition.  Lacking a single example of a transaction in violation of the Robinson-Patman Act, and without a specific allegation in support of a claimed breach of contract, Plaintiff asks this Court to turn the antitrust laws against themselves and to convert a settlement of a prior dispute into an agreement not to compete in the marketplace.  Plaintiff's grievance is that Defendant sometimes gets better deals on products that both companies buy and wins customers by offering them more attractive prices than Plaintiff offers.  From this, Plaintiff asks the Court to infer that competition has suffered.  There is no doctrine in antitrust law, and no reasonable reading of any alleged agreement, that supports any such inference.

AlarMax, a distributor of certain electronic fire and security products, brings this action against Honeywell, which supplies some of those products to AlarMax and sells them in competition with Alarmax.  AlarMax is a serial plaintiff, who has previously threatened to sue Honeywell and has repeatedly sued competitors, former employees, and suppliers under a variety of theories, including alleged antitrust violations.[1]  In this case, AlarMax alleges that Honeywell violated the Robinson-

---

[1] *See, e.g.*, Compl. ¶ 20 ("in 2004, counsel for AlarMax presented a draft complaint to Honeywell alleging 11 causes of action against Honeywell" under the Sherman Act, Robinson-Patman Act, and state law); Declaration of Alison L. MacGregor ("MacGregor Decl.") at Ex. 1 (Complaint currently pending in Allegheny County Court of Common Pleas, alleging that supplier Altronix breached an oral contract for "best price"); Ex. 2 (2007 Western District of Pennsylvania complaint alleging antitrust claims against supplier Tyco, referring to a prior antitrust action against Tyco in 2000); Ex. 3 (2005 complaint filed in Western District of Pennsylvania alleging  breach of contract against supplier Atlas Wire & Cable Corp.); Ex. 4 (2014 complaint filed in Western District of Pennsylvania alleging, *inter alia*, conversion, tortious interference and unfair competition against distributor Tri-ed); Ex. 5 (2007 action in Western District of Pennsylvania against former employee).

Patman Act and breached two contracts that the parties executed a decade ago to settle similar claims.  The contracts echo the Robinson-Patman Act's provisions governing price discrimination.  Now, as then, AlarMax alleges that it has faced a competitive disadvantage because of Honeywell's conduct.  In this case, and in others like it, AlarMax asks a court to constrain competition.  However, neither the Robinson-Patman Act nor the contracts at issue protect AlarMax from competition with Honeywell in the markets where they buy and sell the products at issue.  Accordingly, Honeywell respectfully requests that this Court dismiss the Complaint with prejudice.

## <u>STATEMENT OF FACTS</u>

The Complaint describes AlarMax as a wholesale distributor of electronic fire and security products, such as fire alarms, burglar alarms, closed circuit television (CCTV), access control, intercoms and structured cabling.  (Compl., ¶ 10.)  AlarMax purchases these products from different vendors and manufacturers and sells them to companies that install the equipment in residences and commercial buildings.  (*Id*., ¶¶ 11, 12, 15.)  Honeywell is one of the manufacturers from which AlarMax purchases these products and is also one of the distributors (doing business as ADI) against which AlarMax competes in the sale of the products.  (*Id*., ¶¶ 7, 16.)

AlarMax alleges that this action was inspired by a statement that Honeywell regarded its costs as confidential because disclosure of such information to a competitor like AlarMax could undermine competition.  (*Id*., ¶ 33.)  The statement was submitted in a case AlarMax had filed against a different vendor and competitor for allegedly competing unfairly.  Honeywell's desire to protect the confidentiality of its costs, asserts AlarMax, amounts to an admission that Honeywell had breached two 2004 agreements – the so-called "Settlement Agreement" and "Supply Agreement." (*Id*.)  The Settlement Agreement and Supply Agreement were entered into in 2004 to settle a lawsuit threatened by AlarMax concerning "violation of the Robinson-Patman Act (for knowing inducement of discriminatory prices and terms)" and for violations of Sections 1 and 2 of the Sherman Act.  (*Id*.,

¶ 20.)  The Complaint mentions no provision in either agreement requiring disclosure of costs. Instead, it characterizes terms in the Settlement Agreement to the effect that Honeywell (sometimes referred to as ADI, Honeywell's distribution business) agreed to provide certain products at competitive prices to AlarMax and would not "induce or knowingly accept more favorable price or payment terms, as compared to AlarMax, from non-Honeywell manufacturers," and would not enter into exclusive contracts for covered products with other manufacturers.  (*Id.*, ¶¶ 24-26.)  At issue in the Supply Agreement are terms that allegedly ensured AlarMax would not be disadvantaged on prices and payment terms for certain Honeywell products, compared to other distributors of those products, and that Honeywell would provide AlarMax with reasonable technical and sales support regarding those products.  (*Id.*, ¶ 29.)

Absent from the Complaint is an identification of any purchase or sale that amounted to a violation of law or breach of the alleged agreements.  AlarMax was unaware of any unresolved issue under the agreements until after April 2014, when it conducted research and allegedly discovered an agreement between Honeywell and its vendors, some public presentations by Honeywell personnel extolling benefits of lower prices, some sales fliers for Honeywell equipment, and some vendors who would not offer AlarMax the deals they had allegedly offered Honeywell.  (*Id.*, ¶¶ 33, 40, 45, 50, 56, 59, 63.)  Neither the Complaint itself nor the example of the alleged vendor agreement to which it refers contains a promise of exclusivity, a reference to AlarMax or an identification of any vendor who allegedly agreed to it.  As for vendors who allegedly would not offer AlarMax the same terms they had offered Honeywell and vendors who allegedly would not sell to AlarMax because they dealt with Honeywell, no person, product, communication, time or location is described for any such incident.  (*See, e.g., id.*, ¶ 63.)

With respect to the parties' own dealings, AlarMax alleges that Honeywell failed to abide by the Supply Agreement for products not originally covered by the agreement, failed to negotiate to

add such products to the Agreement, and failed to provide technical support for products it did supply, but offers no example of any specific product or service requested or withheld.  (*Id.*, ¶ 74.) The Complaint alleges that Honeywell otherwise disadvantaged AlarMax, but offers no facts in support of the alleged disadvantage.  (*Id.*)

Admittedly unaware of any conduct in breach of either the Settlement Agreement or the Supply Agreement until April of 2014 (*id.*, ¶ 33), AlarMax now claims that it paid more "across the board" for "several years" on purchases of $50 million per year and enjoyed less favorable terms, and as a result lost sales and profits in an amount yet to be determined.  (*Id.*, ¶¶ 85–91.)

## ARGUMENT

### I.    LEGAL STANDARD

"A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint."  *Lewis v. Allegheny Ludlum Corp.*, No. 11-1619, 2013 WL 3989448, *2 (W.D. Pa. Aug. 2, 2013).  While the court accepts as true all well-pled factual allegations in the complaint, the court "need not accept as true all of the allegations contained in the complaint."  *Id.* at *3.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

Under *Twombly* and *Iqbal*, a plaintiff must plead "facial plausibility."  "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 678 (*quoting Twombly*, 550 U.S. at 557).  "While a plaintiff may rely on the court to draw all reasonable inferences in his favor at the Rule 12(b)(6) stage, a plaintiff who relies on the court to fill in the blanks for all of the

information missing in his complaint does so at his peril." *ChemTech International, Inc. v. Chemical Injection Technologies, Inc*., 170 Fed. Appx. 805, 808 (3d Cir. 2006).  Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679; *New Albany Tractor, Inc. v. Louisville Tractor*, Inc., 650 F.3d 1046, 1051 (6th Cir. 2011) (in a Robinson-Patman Act case, "[b]y foreclosing discovery to obtain pricing information, the combined effect of *Twombly* and *Iqbal* require plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'").

The Third Circuit has set forth a two-part analysis for reviewing motions to dismiss in light of *Twombly* and *Iqbal*.  *See Assembly Tech, Inc. v. Samsung Techwin Co*., 695 F. Supp. 2d 168, 171 (E.D. Pa. 2010) (*citing Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3rd Cir. 2009)).  First, "[a] court considering a motion to dismiss may begin by identifying allegations that are not entitled to the assumption of truth because they are mere conclusions." *Lewis*, 2013 WL 3989448, at *3 (*citing Iqbal*, 556 U.S. at 664.  The Court "may disregard any legal conclusions." *Assembly Tech*, 695 F. Supp. 2d at 171.  Second, with respect to "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  The Third Circuit has "explained [that] 'a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts.'" *Assembly Tech*., 695 F. Supp. 2d at 171 (*quoting Fowler*, 578 F.3d at 210-11).

Federal courts have applied the principles of *Twombly* and *Iqbal* to both Robinson-Patman claims and breach of contract claims.  *See, e.g., New Albany Tractor*, 650 F.3d at 1051-52 (granting motion to dismiss Robinson-Patman Act claims); *Lewis*, 2013 WL 3989448, at *1 (granting motion to dismiss breach of contract case because "there is no plausible breach of contract claim plead in that complaint"); *Textron Fin. Corp. v. Turbine Airfoil Designs*, No. 09-cv-01714, 2010 WL

2265649, at *3-5 (M.D. Pa. Jun. 4, 2010) (granting motion to dismiss contract claim where complaint was "bereft of any non-conclusory factual allegations").

## II.      PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM SHOULD BE DISMISSED

Count II of the Complaint alleges that Honeywell violated Section 2(f) of the Robinson-Patman Act ("RPA").  (*See* Compl., ¶ 90.)  Section 2(f) of the RPA provides:  "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."  15 U.S.C. § 13(f).  The Complaint fails to plead the element at the very threshold of such a claim.  Apart from vague and conclusory allegations of "higher prices," the Complaint does not identify a <u>single product</u> that was <u>actually sold</u> by a <u>single vendor</u> at a <u>certain point in time</u> to both AlarMax and Honeywell, not to mention at <u>different  prices</u>.  AlarMax does not plead which products it bought, from whom, at what time, and at what allegedly higher prices than Honeywell paid for the same products.  Moreover, Plaintiff has not alleged any facts showing that Honeywell "knowingly" induced and/or received any illegal pricing by any vendor.  The absence of these elements is fatal to a Robinson-Patman action.

### A.      The Complaint Fails to Plead the Material Elements of a Section 2(a) Violation By a Vendor

There is no cause of action for inducing price discrimination unless illegal price discrimination has occurred.  To survive a motion to dismiss in an action against a buyer under Section 2(f), a plaintiff must allege the elements of a claim that a seller violated Section 2(a) of the RPA in selling to the plaintiff and defendant.  *See Great Atlantic & Pacific Tea Co. v. FTC*, 440 U.S. 69, 76 (1979); *see also Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 209 (3rd Cir. 2010); *Callahan v. A.E.V., Inc.*, Civ. No. 92-556, 1994 WL 682756, *8 (W.D. Pa. Sept. 26, 1994).

To state a claim under Section 2(a), Plaintiff must allege (1) a difference in price, (2) in contemporaneous sales to two buyers purchasing from a single seller, (3) in interstate commerce, (4)

involving commodities of like grade and quality, (5) that may injure competition.  15 U.S.C. § 13(a); *see also Volvo Trucks N.A., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006).  Failure to adequately plead to these basic elements requires a dismissal of the complaint.  *See Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 142 (3rd Cir. 1998) (affirming dismissal where plaintiff failed to "allege facts to demonstrate that … defendant made at least two contemporaneous sales of the same commodity at different prices to different purchases").

### 1.  The Complaint Does Not Identify a Single Consummated Sale or Transaction with a Vendor, Contemporaneous or Otherwise

While the Complaint is replete with bare recitals and conclusory allegations that Honeywell "knowingly induced discriminatory prices" for Electronic Fire and Security Products from other manufacturers, there is not a single allegation in the Complaint identifying two contemporaneous sales by any vendor – one sale to Honeywell and the other to AlarMax – at different price levels. (*See, e.g.*, Compl., ¶¶ 43, 50-66, 78-91.)  This omission alone is fatal to Plaintiff's Robinson-Patman claim under controlling Third Circuit case law.  *Crossroads Cogeneration*, 159 F.3d at 142; *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 227-28 (3rd Cir. 2008) (noting the need to "keep the RPA confined" to actual sales at two different prices).

Instead of alleging sales that are the *sine qua non* of an RPA case, the Complaint alleges an agreement that supposedly, "by its own terms, makes the lower pricing that Honeywell receives from vendors exclusive to Honeywell."  (Compl., ¶¶ 50, 81.)  The document to which the Complaint refers, which AlarMax provided to Honeywell but not to the Court,[2] does not provide for exclusivity. To the contrary, the document contains a provision that AlarMax did not reveal, which provides precisely the opposite of exclusivity – an express statement that "[t]here are no … exclusivity

---

[2] On or about October 31, 2014, AlarMax's counsel attached the purported agreement to its draft complaint accompanying its pre-suit demand to Honeywell.  MacGregor Dec. ¶ 8.  Without conceding the authenticity of the document or admitting that it reflects any contract actually entered into by Honeywell, Honeywell attaches a copy of that draft agreement to the accompanying MacGregor Declaration as Exhibit 6.

obligations in this Agreement." MacGregor Decl., Ex. 6. Another phrase in the document, adjacent to the language quoted in the Complaint, requests the "lowest price (including incentives, rebates and other offers) … *then-available to similarly situated customers*," which by its express terms is not exclusive to Honeywell. *Id.* (emphases added); *see also Ocean State Physicians Health Plan Inc. v. Blue Cross & Blue Shield*, 883 F.2d 1101, 1110 (1st Cir. 1989) ("We agree with the district court that such a policy of insisting on a supplier's lowest price … tends to further competition on the merits and, as a matter of law, is not exclusionary").

Even assuming, *arguendo*, that the Complaint identified and accurately characterized this alleged agreement between Honeywell and a vendor, the allegation would fail to satisfy the burden of pleading an RPA violation. A general distribution agreement is not evidence of an actual sale. *See Vaughn Medical Equipment Repair Service LLC v. Jordan Reses Supply Co.*, Civ. No. 10-00124, 2010 WL 3488244, *11 (E.D. La. Aug. 26, 2010) (alleging that a distribution agreement that called for discriminatory pricing at best describes an "offer" and "does not allege any actual sales took place"). As the Third Circuit has stated, "[m]erely offering lower prices to a customer does not state a price discrimination claim." *Crossroads Cogeneration*, 159 F.3d at 142. Thus, even a signed agreement would only show, at best, a mere "offer" to sell and not an actual sale. *Id.*

The alleged vendor agreement that AlarMax offers as evidence of discriminatory pricing demonstrates the many reasons why courts have rejected such allegations as indicative of price discrimination. The Complaint is silent as to which vendors allegedly executed the agreement with Honeywell, what products were offered under the agreement, what prices applied and over what periods of time. (*See* Compl., ¶¶ 50-55.) The alleged unsigned vendor agreement (which does not even indicate a counterparty) is similarly unspecific as to products, pricing, commencement, termination or any other material term of a transaction.

Plaintiff's vague references to powerpoint presentations that allegedly "tout[] the lower pricing Honeywell must receive" are likewise insufficient to allege contemporaneous sales or discriminatory price terms.  (*Id.*, ¶¶ 55-65); *House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 64657, *9 (N.D. Ill. Jan. 8, 2014) (absent identification of actual sales and price differences, vendor's minimum pricing policy was insufficient to warrant an inference of alleged price discrimination); *Monsieur Touton Selection, Ltd. v. Future Brands, LLC*, Civ. No. 06-1124, 2006 WL 2192790, *6 (S.D.N.Y. Aug. 1, 2006) (dismissing claim for failure to identify "a single allegedly discriminatory transaction").

### 2.   The Complaint Gives No Notice of Any Product Allegedly Sold At Discriminatory Prices

Plaintiff's allegations of examples of discrimination are also devoid of any information as to the products sold at allegedly discriminatory price levels, who sold them, and when they were sold. The Complaint alleges by "way of example" that "Altronix, Wheelock, RCI, Ditek, Bosch, Flir and others have sold their Electronic Fire and Security Products to AlarMax at prices higher than the ones paid contemporaneously by Honewell/ADI for those same products."[3]  (Compl., ¶ 84.)  Nowhere do these allegations reveal which products any of the named vendors allegedly sold to Honeywell and AlarMax at discriminatory prices.  This deficiency is fatal.  *See Monsieur Touton*, 2006 WL 2192790, at *5, fn. 55 ("Complaint does not specify the product that Touton actually buys from defendants, instead referring to the undifferentiated 'Absolut Brand'"); *Tires Incorporated of Broward v. The Goodyear Tire & Rubber Co.*, 295 F. Supp. 2d 1349, 1353 (S.D. Fla. 2003) ("Plaintiff should be required to name in its complaint the specific tires by make and model by

---

[3] Similarly, the Complaint's allegation that certain vendors refused to sell to AlarMax because of alleged "exclusive agreements" is not only conclusory, but not actionable under the RPA.  (Compl., ¶¶ 63, 84); *see, e.g., Monsieur Touton*, 2006 WL 2192790, at *5 ("any Robinson-Patman claim premised on defendants' unwillingness to sell Touton the full range of Absolut Vodka products must be dismissed"); *Vaughn Medical*, 2010 WL 3488244, at *10 (alleging price discrimination resulting from seller's refusals to sell its products "do not give rise to an actionable claim under the Robinson-Patman Act").

9

Goodyear … and to state with some specificity the facts which support the ultimate conclusion that the tires are of like grade and quality"); *Yagoozon, Inc. v. Fun Express, LLC*, No. 13-595, 2014 WL 1922793, \*5 (D.R.I. Feb. 10, 2014) (magistrate judge recommending dismissal of RPA claim because "the product with disputed pricing was never identified, the price was never identified and the two products were described by Yagoozon as only 'similar' to one another – not identical"); *Yagoozon, Inc. v. Fun Express, LLC*, No. 13-595, 2014 WL 1922797, \*4 (D.R.I. May 14, 2014) (adopting magistrate's recommendation).

### 3. The Complaint Fails to Allege Any Actual Price Differential

Compounding its failure to identify a single sale or product, the Complaint is also devoid of any factual allegation regarding the price that Honeywell paid to a vendor and a different price contemporaneously paid by AlarMax to that same vendor. *See, e.g., Synthes, Inc. v. Emerge Medical, et al.*, Civ. No. 11-1566, 2012 WL 4473228, \*15 (E.D. Pa. Sept. 28, 2012) (complaint failed to "set[] forth any difference in price charged to different purchasers … for products of like grade or quality"); *Goodloe v. National Wholesale Co., Inc.*, No. 03 C 7176, 2004 WL 1631728, \*9 (N.D. Il. Jul. 19, 2004) (dismissing RPA claim in part for failure to allege the "favorable prices and terms actually granted to his competitors"); *Yagoozon*, 2014 WL 1922793, \*5 (the complaint failed to allege "what the sale price was").  None of the so-called "examples" in the Complaint contain any indication of an actual price differential for any product.  (*See, e.g.,* Compl., ¶¶ 64-66, 84 (alleging "clear differential" or "raising prices" without identifying any prices).)

### B. The Complaint Fails to Allege that Honeywell "Knowingly" Induced or Received Discriminatory Pricing

As the Supreme Court held, to establish a claim under Section 2(f), a plaintiff must ultimately prove that the buyer not only received the benefit of price discrimination in the form of lower prices, but also that, by virtue of the buyer's trade experience and common sense, defendant knew or should

10

have known that it was the beneficiary of an unlawful price discrimination.  *Automatic Canteen Co. v. FTC*, 346 U.S. 61, 79-80 (1953); *Marjam Supply Co. v. Firestone Bldg. Products Co., LLC*, Civ. No. 11-7119, 2014 WL 5798383, *5 (D.N.J. Nov. 7, 2014); *Allied Sales & Serv. Co. v. Global Indus. Techs., Inc.*, Civ. No. 97-0017, 2000 WL 726216, *22 (S.D. Ala. May 1, 2000) (knowledge not shown because seller's price lists and notice to allegedly favored customer did not mention prices to plaintiff).  Congress included this knowledge requirement because the negotiation of lower prices is part of legitimate competition, which is consistent with the overall goals of antitrust law.  *Id.*, at 73 (Section 2(f) is not intended to put "a buyer at his peril whenever he engages in price bargaining").  Here, AlarMax's Section 2(f) claim fails because the Complaint does not allege any facts demonstrating, or rendering plausible the inference, that Honeywell knowingly induced or received unlawful pricing from vendors; and neither the alleged vendor agreement nor the April 2014 Honeywell Affidavit[4] warrants this implausible inference.  If any inference arises from the pleadings, it is from the admission by AlarMax that it was unaware of its various allegations until its alleged research in 2014; there is no reason to believe either competitor was aware of the prices the other was paying.

### 1.    The April 2014 Honeywell Affidavit Is Insufficient to Show Honeywell's Knowledge of Competitor's Pricing

No allegation in the Complaint supports Plaintiff's assertion that the April 2014 Honeywell Affidavit shows discrimination.  (Compl., ¶ 86.)  This affidavit was submitted in another lawsuit (albeit commenced by AlarMax) to protect the confidentiality of Honeywell's own pricing and cost information from its competitors, such as AlarMax.  (*Id.*, Ex. 1 ¶¶ 6-9.)  The affidavit says nothing about Honeywell's knowledge of any prices AlarMax is receiving from Altronix or other vendors.  *Id*.  The only plausible (and possible) inference that can be drawn from this affidavit is that

---

[4] The Complaint attaches as Exhibit 1 the April 2014 affidavit of Honeywell's Vice President and General Counsel, Joshua Foster (the "April 2014 Honeywell Affidavit").

Honeywell considers cost information – *i.e.*, its vendor contracts and arrangements revealing its purchases – to be proprietary and confidential to the respective distributor.  *Id.*  In short, it is none of Honeywell's business to know what terms AlarMax is receiving from its vendors, inasmuch as it *should be* none of AlarMax's business to know what Honeywell is receiving from these vendors.

There is nothing in the affidavit nor any facts alleged in the Complaint that would permit the inference that Honeywell is knowingly "receiving pricing from vendors, including Altronix, better than pricing extended to AlarMax…."  (*Id.*, ¶¶ 37, 86.)  Additionally, there is nothing improper or illegal about Honeywell trying to protect its commercially sensitive pricing information and costs from competitors such as AlarMax.  To the contrary, the sharing of such information may even expose competitors like AlarMax and Honeywell to allegations of collusion.  *See, e.g.*, FTC/DOJ Antitrust Guidelines for Collaborations Among Competitors, issued April 2000 (the "April 2000 Antitrust Guidelines")[5]; *see also Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins.*, 784 F.2d 1325, 1346 (7th Cir. 1986) (insurance provider's bid price data from competing hospitals deemed "sensitive trade secret" because "[a]ccess to the data [by hospitals] could turn an antitrust suit into the basis of effective collusion, a concern we have expressed above"); *W. Fuels-Illinois, Inc. v. I.C.C.*, 878 F.2d 1025, 1029 (7th Cir. 1989) ("the ICC's finding that there is no inconsistency between nondisclosure and the goal of allowing market forces to regulate contract prices is legitimate since the ICC concluded that such disclosure would lead to price collusion rather than greater competition").

The Complaint contains not a single specific allegation that Honeywell had knowledge of prices AlarMax was paying to vendors.  Very recently, Judge Martini from the District Court of New

---

[5] As the FTC/DOJ warned, the "the sharing of information related to a market in which the collaboration operates or in which the participants are actual or potential competitors may increase the likelihood of collusion on matters such as price, output, or other competitively sensitive variables. The competitive concern depends on the nature of the information shared. Other things being equal, the sharing of information relating to price, output, costs, or strategic planning is more likely to raise competitive concern than the sharing of information relating to less competitively sensitive variables."  April 2000 Antitrust Guidelines, at p. 15, also available at http://www.ftc.gov/sites/default/files/documents/public_events/joint-venture-hearings-antitrust-guidelines-collaboration-among-competitors/ftcdojguidelines-2.pdf.

Jersey dismissed a similar complaint alleging a Section 2(f) claim because "nowhere does the

[complaint] allege that the [distributor defendants] had any knowledge about the prices Firestone

charged [plaintiff], nor does it explain why the [distributor defendants] would have reason to know

that the discounts it received were unjustifiably low." *Marjam*, 2014 WL 5798383, at *5.  Like

AlarMax, Marjam had "specified the types of discounts that Firestone gave the Moving Defendants"

but recounting the discounts was not sufficient to "raise a plausible inference" that they knew the

discounts to be illegal.  *Id*.  In a similar RPA lawsuit involving Marjam in the Eastern District of New

York, the district court also dismissed Marjam's price discrimination counterclaim because it failed

to adequately plead the knowledge element of Section 2(f).[6]  *See Dayton Superior Corp. v. Marjam

Supply Co., Inc.*, No. 07-cv-5215, 2011 WL 710450, *12 (E.D.N.Y. Feb. 22, 2011).  As the court

observed:

> [I]t appears that Marjam is attempting to create an inference that because this
> alleged tying arrangement existed, Barker knew (or should have known) that it
> was receiving favorable discriminatory prices.  The Court finds, however, that
> Marjam's allegations regarding the existence and contours of the alleged tying
> arrangement are wholly conclusory in nature.  Marjam has alleged nothing
> further in the way of factual support for its assertion that Barker had either
> actual or constructive knowledge of any discriminatory favorable prices that it
> received from Dayton.

*Id*., at *13.  Likewise, the Complaint utterly fails to allege any facts demonstrating that Honeywell

had knowledge of any discriminatory prices.  Even before *Twombly* and *Iqbal*, and especially now, it

is simply not enough for Plaintiff to offer conclusory assertions that Plaintiff "paid higher prices for

the same [products] that [defendant] purchased from the same vendors over the course of several

years."  (Compl., ¶¶ 64-65, 85); *see Fresh N' Pure Distributors, Inc. v. Foremost Farms*, No. 11-C-

---

[6]  Like Marjam Supply Company, AlarMax has been a repeat litigant whose business model appears to be centered on commencing and threatening lawsuits against suppliers to extract favorable pricing for itself and/or against competitors to obtain confidential and proprietary market information.  *See supra* fn. 1.

470, 2011 WL 5921450, *4 (E.D. Wis. Nov. 28, 2011) ("[t]o state a claim, Fresh N' Pure must point

to instances where Dean sold products to Fresh N'Pure's competitors" at a discriminatory price).

### 2.      The Complaint Seeks to Inhibit Honeywell from Seeking Lower Prices from Vendors and Offering Lower Prices to Customers

The most plausible inference to draw from AlarMax's objection to Honeywell's allegedly

low costs and low prices is an aversion to competition, not a violation of the antitrust laws. *Gorlick*

*Distribution Centers, LLC v. Car Sound Exhaust System, Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013).

As the Ninth Circuit warned, "[t]o put a buyer at risk of liability any time he asks for a lower-than-

listed price would do enormous damage to the 'sturdy bargaining between buyer and seller for which

scope was presumably left' by our antitrust laws." *Id.* (*citing Automatic Canteen*, 346 U.S. at 74)).

The Court should similarly dismiss the Complaint, as it is nothing more than an effort to suppress

Honeywell's efforts to obtain lower costs from vendors and to offer lower prices to its customers.

This is not the first time that AlarMax has threatened or commenced litigation to defend itself

from competition in the marketplace.  Indeed, one such case, *AlarMax v Altronix*, is currently

pending in the Court of Common Pleas for Allegheny County.  *See* MacGregor Decl., Ex. 1

(complaint filed by AlarMax seeking breach of an alleged oral contract for "best price").  Likewise,

AlarMax has twice brought antitrust claims against Tyco.  *Id.*, Ex. 2 (2007 complaint against Tyco

referring to a prior action in 2000).  In sum, the Complaint's allegations of unlawful pricing "for

many years," "over several years," or "over the course of several years" (*see* Compl., ¶¶ 64-65, 85),

none of which allegedly dawned on AlarMax until April 2014, give no notice as to what transactions

are at issue and are insufficient to meet the elements of a Robinson-Patman claim.  Instead, the

Robinson-Patman claim in the Complaint evinces an aversion to competition and an effort to

discover the type of confidential costs and pricing information that competition authorities have

warned competitors not to share.  *See, e.g.*, April 2000 Antitrust Guidelines; *Volvo Trucks*, 546 U.S.

at 181 ("we would resist interpretation geared more to the protection of existing competitors than to

the stimulation of competition"); *Toledo Mack Sales*, 530 F.3d at 228, fn. 17 ("we are bound by

precedent and think it no injustice to narrowly interpret the oft-questioned RPA").

## III.   THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

The deficiencies that permeate Plaintiff's RPA claim also doom the claim for breach of

contract.  The Complaint alleges that Honeywell and AlarMax entered into the Settlement

Agreement and Supply Agreement to settle antitrust and Robinson-Patman Act claims that AlarMax

had alleged against Honeywell.  Those allegations concerned "exclusive arrangements" and

"knowing inducement of discriminatory prices and terms."  (Compl., ¶¶ 19, 20.)  To resolve this

dispute, as AlarMax alleges, Honeywell and AlarMax entered into the Settlement Agreement and

related Supply Agreement that allegedly would prevent Honeywell from discriminating against

AlarMax and would prevent Honeywell from knowingly inducing others to do so.  (*Id.*, ¶ 21.)  The

terms AlarMax uses to characterize the Settlement Agreement and Supply Agreement reflect the

basic obligations that the antitrust laws apply to all companies – offer "competitive" terms and

conditions, and "not facilitate, encourage or coerce [others] to boycott AlarMax." (*Id.*, ¶ 26.)

Plaintiff has not pled conduct that breached the alleged terms of these contracts.

"Pennsylvania law requires a plaintiff alleging breach of contract to plead facts establishing the

existence of a contract, a breach of that contract, and damages resulting from the breach." *Alpha Pro

Tech, Inc. v. VWR International LLC*, 984 F. Supp. 2d 425, 442 (E.D. Pa. 2013).  To adequately state

a claim for breach of contract under Rule 12(b)(6), a plaintiff must "do more than simply assert that

[the defendant] 'breached' or 'revoked' a contract."  *ChemTech*, 170 Fed. Appx. at 808.

15

**A.    Plaintiff Has Not Pled that Honeywell Breached the Settlement Agreement**

  **1.    Plaintiff Has Not Pled a Breach of Section 5(b) of the Settlement Agreement Concerning Honeywell's Purchases from Other Manufacturers**

According to AlarMax, Section 5(b) of the Settlement Agreement contained Honeywell's agreement to "not induce or knowingly accept more favorable price or payment terms, as compared to AlarMax, from non-Honeywell manufacturers" and to not "knowingly induce non-Honeywell manufacturers, or sellers, of Electronic Fire and Security Products to provide more favorable prices to Honeywell for Electronic Fire and Security Products" with the understanding "that such prices will be provided exclusively to Honeywell or with the understanding that Honeywell will receive a lower price that AlarMax receives" from that vendor or manufacturer.   (Compl., ¶ 26.)  To plead a breach of Section 5(b) of the Settlement Agreement, Plaintiff must plead facts that if proven would demonstrate a breach.  *See ChemTech*, 170 Fed. Appx. at 808 (dismissing breach of contract claim where plaintiff simply "state[d] that a contract was breached" without the "factual allegations that would underpin this legal conclusion"); *Assembly Tech*, 695 F. Supp. 2d at 180 (motion to dismiss granted as to breach of consulting agreement providing that consultants shall not "cooperate" with any other company, as complaint only alleged that the consultants had some discussions with defendant about future employment, which did not "sufficiently allege breach" of the agreement).  As is the case with its RPA claim, Plaintiff has not alleged that Honeywell received a lower price than AlarMax from a single manufacturer on any product in contemporaneous transactions, and has not alleged any basis to infer that Honeywell did so knowingly.  Accordingly, Plaintiff has not pled any breach of Section 5(b) of the alleged Settlement Agreement.

**a.      Plaintiff Has Not Plead that Honeywell Received a Lower Price Than AlarMax from Non-Honeywell Manufacturers**

At the outset, Plaintiff has set forth no well-pleaded plausible allegations that Honeywell has received a lower price than AlarMax from a single manufacturer, and thus, cannot show that Honeywell "induce[d] or knowingly accept[ed] more favorable price or payment terms."[7]  Plaintiff's allegations are vague, conclusory and should disregarded by this Court under *Twombly* and *Iqbal*.

First, there is nothing in the 2014 Honeywell Affidavit suggesting that Honeywell was receiving lower prices from Altronix (the only manufacturer mentioned in the affidavit) or other non-Honeywell manufacturers as compared to AlarMax.  The affidavit states that Honeywell considers Distributor Price Information to be proprietary and that it is "general industry practice" for this information to be kept confidential.  (Compl., Ex. 1, ¶ 6.)  That Honeywell did not want to share sensitive cost information with Plaintiff does not demonstrate anything other than the desire to avoid such exchanges between horizontal competitors.  *See supra* at p. 12.  This should not come as any "surprise" to AlarMax, which regards such information as confidential and proprietary, and has sought to enforce that confidentiality in this Court.[8]  Indeed, Plaintiff does not allege that anything in the Settlement Agreement or Supply Agreement required it to share price information.

Second, Plaintiff alleges that Honeywell's distribution division ADI was receiving lower prices based on an alleged "vendor agreement."  *See* Compl., ¶ 50.   Leaving aside the failure to identify any party who entered this alleged agreement (*see supra* at pp. 8-9),[9] Plaintiff alleges no

---

[7] Plaintiff does not allege any facts whatsoever about payment terms, and does not claim that Honeywell received better payment terms than Plaintiff.

[8] In 2007, AlarMax sought a preliminary injunction in this Court  seeking to enjoin a former employee who "conspired" with others from "utilizing, disclosing or misusing any confidential, proprietary or trade secret information of ALARMAX including, but not limited to, customer lists, customer account information, vendor account information, pricing information, [and] cost information…."  MacGregor Decl., Ex. 5.

[9] An unsigned contract form does not establish the existence of a sale or contract.  *See, e.g., CAC Group, Inc. v. Maxim Group, LLC*, No. 12 Civ. 901, 2012 WL 4857518, *4 (S.D.N.Y. Oct. 10, 2012) (granting motion to dismiss breach of contract claim based on "draft" agreement).

facts connecting this alleged agreement to any transaction or exclusion, the gravamen of an action for

breach.  Plaintiff must allege facts showing an actual breach, which it has not done.  *See Shionogi*

*Ireland Ltd. v. United Research Labs., Inc.*, No. 11-2861, 2011 WL 3610451, at *3 (E.D. Pa. Aug.

16, 2011) (dismissing counterclaim for breach of license agreement where defendant allegedly

demanded more for license than the nominal fee specified in the contract;  "even if [counterclaim

defendant] demanded more money that it was entitled to receive, there is no allegation that

[counterclaim plaintiff] actually paid the money or that [counterclaim defendant] withheld

subsequent deliveries of the product").

Even assuming the alleged vendor agreement were an actual contract, and it had identified

specific products or transactions, nothing in it or in the Complaint explains how it would imply a

breach of any other contract.  The alleged vendor agreement contains a standard most-favored nation

clause providing that Honeywell will receive the "lowest price (including incentives, rebates and

other offers)" provided to other similarly situated buyers.[10]  By omitting the reference to similarly

situated buyers, dwelling on the specifications of the rebates, and declaring the provisions "circular in

nature," AlarMax claims that the alleged agreement somehow mandates exclusivity.  (Compl., ¶¶ 51,

53.)  This is not a plausible interpretation.  Pennsylvania courts have consistently construed the word

including as a term of "enlargement*."  Pa. Human Relations Comm'n v. Alto-Reste Park Cemetery*

*Ass'n*, 453 Pa. 124, 130-31 (1973) ("[T]he term 'include' is to be dealt with as a word of enlargement

and not limitation"); *Braun v. Wal Mart Stores, Inc.*, 24 A.3d 875, 963 (Pa. Super. 2007) (same).

Moreover, "including" or "includes" does not show that a list is exhaustive.  *Marmon Coal v.*

*Eckman*, 726 F.3d 387, 393 (3rd Cir. 2013).  Rather, the examples "included" within are illustrative.

---

[10] Likewise, as discussed in Section I.A.1 above,  the alleged vendor agreement provides that the manufacturer "shall provide sufficient quantities of Products to ADI at its lowest price (including incentives, rebates and other offers) and longest payment terms then available to similarly situated customers in similar regions purchasing similar quantities of Product on similar terms to satisfy all purchase orders submitted by ADI."  MacGregor Decl., Ex. 6, at § 1.2.

*Id.*; *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2170 (2012).  By the settled rules of contract construction, the "lowest price" in the alleged agreement is inclusive of everything – *e.g.,* "incentives, rebates or other offers."   The language means no more or less than the meaning AlarMax ascribes to similar language found in the Settlement and Supply Agreements.  AlarMax alleges that the Supply Agreement "ensured that AlarMax would not be disadvantaged on the final purchase price and payment terms for [certain] products (including all discounts, rebates, or any other incentive programs) as compared to other distributors, including ADI."  (Compl., ¶ 29.)  AlarMax cannot have it both ways.  The circularity is not in the provisions of the alleged agreement, but in the paragraphs of the Complaint.

Third, Plaintiff attempts to base a breach of Section 5(b) on a "powerpoint" presentation from 2011, in which Plaintiff alleges that Honeywell  "demands a 25% discount on promotions [from vendors] which is well below what AlarMax is paying for products."  (Compl., ¶ 55.)  There is no allegation that Honeywell actually received a 25% discount.  Nor has Plaintiff pled if or when this 25% discount happened, which products were involved, which manufacturers were involved, or whether the products involved were the same products that Plaintiff buys from these manufacturers at the same time.  The most plausible inference one can draw from this allegation is that Honeywell sometimes asks vendors for discounts and offers promotional services in return.  Nothing in the Robinson-Patman Act or the alleged agreements prohibit this activity – it is the essence of competition.  AlarMax does not allege that there is anything that prevented it from offering similar promotional services to its vendors, or from seeking support from its vendors for such promotions, nor is there any allegation that any vendor is precluded from providing such support to AlarMax.

19

**b.**   **Plaintiff Has Not Pled that Honeywell Knowingly Obtained a Better Price From Non-Honeywell Manufacturers**

Even if Plaintiff had identified transactions in which Honeywell received lower prices than AlarMax received, this alone would not allege a breach of Section 5(b).  Like the Robinson-Patman Act, the alleged language of Section 5(b) requires that Honeywell "knowingly induce[d] or accept[ed]" the lower prices, or that Honeywell entered into an exclusive price arrangement with such manufacturers that prevented the manufacturers from giving AlarMax the same price Honeywell receives.  *See* Compl. ¶ 26.

Plaintiff has failed to meet its burden.  If anything, the allegations in the Complaint reveal an industry in which competitors like Honeywell and AlarMax did <u>not</u> know what the other was paying to manufacturers.  AlarMax was "unaware" of any alleged breach of the Settlement and Supply Agreements.  Honeywell treated its cost terms as confidential information.  MacGregor Decl., Ex. 6, at § 8.  So did AlarMax, which went so far as to sue a former employee it suspected of divulging the information.  *Id*., Ex. 5.  Nowhere does the Complaint allege Honeywell had knowledge of prices AlarMax paid.  This renders Plaintiff's conclusory allegations that Honeywell "knowingly" received or induced lower prices implausible.  *See Alpha Pro Tech*., 984 F. Supp. 2d at 444-45 (granting motion to dismiss contract and rejecting conclusory assertions that did not advance a "reasonable" or "logical" interpretation of the contract.").

**2.**   **Plaintiff Has Pled No Facts Supporting a Breach of Section 5(c) or 5(d) of the Alleged Settlement Agreement**

Plaintiff alleges that in the Settlement Agreement, Honeywell promised not to enter into "exclusive sale or distribution agreements."  (Compl., ¶ 26.)  Aside from the alleged "vendor agreement," which states "there is no minimum purchase requirements or exclusivity obligations,"[11]

---

[11] The alleged vendor agreement provides that it is governed by New York law, under which "the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint."  *See Taussig v. Clipper Group*, 13

AlarMax alleges that "[v]endors such as Edwards Signaling, Proficient Auto, Viking Electronics, Arecont Vision and others have refused to sell to AlarMax because of the exclusive arrangements with ADI…" (Compl., ¶ 63.)  Such vague language does not begin to plead a breach.  The Complaint identifies no agreement that these vendors allegedly entered, no circumstances of the alleged refusal, no products, no dates – nothing that approaches notice of conduct that could amount to a breach.  *See ChemTech*, 170 Appx. at 808 (dismissing complaint where no "factual allegations" were pled to underpin the "legal conclusion" of a breach).

For the same reasons, Plaintiff's conclusory allegation that unnamed vendors have told AlarMax that these vendors are not "permitted" by Honeywell to give AlarMax the "same" promotions and pricing that Honeywell receives, does not state a breach.  (Compl., ¶ 62.)  There is nothing alleged in the Complaint that would prevent Plaintiff from getting the same prices that Honeywell receives from other manufacturers.  If some manufacturers decided not to offer AlarMax a deal they had offered Honeywell, nothing in the alleged agreements would prohibit it. Similarly, Plaintiff's allegation in Paragraph 66 of the Complaint, concerning an unnamed "vendor of electronic security products" who "raised its prices to AlarMax and all its other customers" because of "demands" by Honeywell for "additional price concessions," gives no explanation as to how this alleged decision by a vendor breached any alleged agreement between Honeywell and AlarMax.

Finally, AlarMax fails to allege any facts that support its allegation that Honeywell breached Section 5(d) of the Settlement Agreement.  According to the Complaint, Honeywell allegedly agreed that it would "not facilitate, encourage or coerce non-Honeywell manufacturers [of Electronic Fire and Security Products sold in North America] to boycott AlarMax." (Compl., ¶¶ 26, 73.)  AlarMax

---

A.D.3d 166, 167 (N.Y. App. Div. 1st Dep't 2004) (affirming dismissal of breach of contract claim).  Accordingly, the applicable law rejects Plaintiff's characterization.

has not pled any facts that show any non-Honeywell manufacturers were "boycotting" AlarMax, let alone that Honeywell facilitated, encouraged or coerced such boycott.

### 3.     AlarMax Has Not Pled a Breach of Section 4(b) and 5(a) of the Settlement Agreement

Section 4(b) of the Settlement Agreement governs sales of "electronic fire products" by Honeywell to AlarMax, and provides that Honeywell would not disadvantage AlarMax on the final purchase price of these products.  (Compl., ¶ 24.)  Based on prices that allegedly appeared in unidentified "sales fliers" for unspecified quantities of unspecified products at unspecified times, Plaintiff claims that Honeywell favored its own distribution division over AlarMax, which allegedly pays more for the same products.  (*Id*., ¶ 45.)  This indicates a breach of the Settlement Agreement, according to Plaintiff, because there are only "two circumstances" in which Honeywell could offer flyer prices – if Honeywell gave its own distribution business a lower price than it gave AlarMax, or if Honeywell gave itself a rebate that AlarMax did not receive.  (*Id*., ¶ 47.)  This, however, is speculation based on empty assertion that does not meet the standard of *Twombly* and *Iqbal*.  *See Taylor v. Unum Life Ins. Co*., No. 07-724, 2008 WL 144204, *4 (W.D. Pa. Jan. 11, 2008) (Cercone, J.) ("Factual allegations must be enough to raise a right to relief above the speculative level"; granting motion to dismiss breach of insurance contract) (*quoting Twombly*, 550 U.S. at 555)).

Perhaps AlarMax can imagine no more than the two alleged circumstances in which such sales could have occurred, but Courts have often observed what AlarMax cannot fathom – sales at different prices, even at prices below cost, exist for many good reasons.  *See, e.g., Fresh N' Pure Distributors*, 2011 WL 5921450, at *5 ("[i]t should go without saying that there are innumerable reasons why a competitor might offer a lower price even to the extent of offering promotions that result in its selling a product at a loss, in order to win over a customer," and "[w]ithout more, this allegation does not support a conclusion that [the defendant] offered [plaintiff's competitor] a lower

price than it offered to [plaintiff]").   Nothing in the Settlement Agreement (or Supply Agreement) prevents ADI from selling products to customers at lower prices than AlarMax – which is all that AlarMax has pled.  To the contrary, the antitrust policies that AlarMax claims to be vindicating encourage such vigorous competition.  Under *Twombly* and *Iqbal*, Plaintiff's allegations do not reach the bar of a plausible inference of a contract breach.

### 4.      Plaintiff Has Not Pled A Breach of Section 5(f)

Plaintiff alleges that "Honeywell/ADI's ability to offer packages of Honeywell electronic fire products below the combined individual prices that AlarMax pays is a violation of Section 5(f) of the Settlement Agreement."  (Compl., ¶ 48.)  AlarMax alleges that in Section 5(f) of the Settlement Agreement, "Honeywell agree[d] not to offer package discounts and kits with pricing differentials that coerce the package purchase."  (*Id.*, ¶ 26.)  Even if the "ability" to offer packages equated to the actual offer, which it does not, AlarMax does not identify a single package in its pleadings.  Nor has AlarMax alleged that the terms Honeywell offered coerced anyone into buying a package.  Nor has AlarMax pled the elements of a coercive bundling claim that the alleged Settlement Agreement prohibits.   Nothing in the antitrust laws or in the parties' alleged agreements prohibits Honeywell from offering attractive packages to customers.  To the contrary, catering to the convenience of customers is a valuable facet of competition.  Accordingly, the courts have carefully considered the appropriate standards to apply to bundled discounts.  *See* Antitrust Law Developments (ABA Section of Antitrust Law, 7th Ed. 2012), Vol. I, at pp. 256-259.  The alleged Supply Agreement recites a narrow and strict standard – coercion – as the impermissible means to market a bundle.  No allegation in the Complaint describes any fact indicating that Honeywell coerced anyone to purchase a bundle of equipment.

### B.      AlarMax Has Not Pled a Breach of The Supply Agreement

Plaintiff alleges that the Supply Agreement, like the Settlement Agreement, was entered into

in order to remedy Honeywell's "knowing inducement of discriminatory prices" in violation of the RPA. (Compl., ¶¶ 19-20.) AlarMax alleges that "like the Settlement Agreement, the Supply Agreement also ensured that AlarMax would not be disadvantaged on the final purchase price and payment terms for [certain] products (including all discounts, rebates, or any other incentive programs) as compared to other distributors, including ADI." (*Id.*, ¶ 29.) The very few allegations that Plaintiff relies on to state a claim for breach of the Supply Agreement, governing sales from Honeywell to AlarMax, are wholly conclusory[12]:

- "**For example,** Honeywell has refused to supply Electronic Security Products not originally included in Exhibit A to the Supply Agreement, entitled "Prices for Certain Supplied Products," even though Section 2.1, through the use of the defined term "Supplied Products," requires Honeywell to do so, and even though Section 3.1(b) of the Supply Agreement requires Honeywell to negotiate pricing for those new products "in good faith." (*Id.*, ¶ 68) (emphasis added);

- "In addition, Honeywell has failed to provide any technical or sales support to AlarMax, as required by Section 2.4 of the Supply Agreement." (*Id.,* ¶ 69); and

- "Honeywell has materially breached Section 3.2 of the Supply Agreement by disadvantaging AlarMax on the final purchase price and payment terms (including all discounts, rebates or other incentive programs) for Electronic Security Products as compared to other distributors." (*Id.*, ¶ 74.)

These allegations fail to plead the elements of a claim for breach of contract. First, Plaintiff has alleged no actual refusals to sell the alleged products that were not included in the Supply Agreement, and does not describe any attempt to negotiate, much less a negotiation lacking good faith, to add new products to the agreement. Second, Plaintiff provides no clue whatever about the technical or sales support that Honeywell allegedly did not provide. There is not even an allegation that any such support was requested, much less whether the request was "reasonable" as required by

---

[12] In paragraph 70 of the Complaint, Plaintiff claims that "Honeywell's actions with respect to pricing, as set forth in Paragraphs 33 through 66, constitute violations of Section 3.2 of the Supply Agreement…." (Compl., ¶ 70.) However, none of the complained of conduct, such as the alleged draft vendor agreement, involved the sale by Honeywell to AlarMax – rather, it allegedly involves the alleged pricing by non-Honeywell manufacturers to Honeywell's distribution division ADI. Accordingly, the majority of Plaintiff's allegations have nothing to do with the Supply Agreement, which concerns sales from Honeywell to AlarMax.

Section 2.4 of the Supply Agreement.  Nor has Plaintiff pled how it was injured by any alleged lack of technical support.  Finally, and critically, Plaintiff does not plead any facts about how it has been commercially disadvantaged compared to other Low Voltage Distributors.  This Complaint does not put Honeywell on notice of which products are involved, and which Low Voltage Distributors it claims are getting "better" deals than AlarMax on which products.  As with Plaintiff's RPA claim, these allegations are insufficient to state a claim for breach of contract.

The antitrust laws, including the Robinson-Patman Act, are intended to preserve competition.  Courts have long recognized that the price-discrimination provisions of the Robinson-Patman Act must not be interpreted to hinder competitors' endeavors to lower costs and win customers.  *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 221-24 (1993).  The vague assertions in this Complaint, whether expressed as antitrust claims or contract claims, depict a Plaintiff that seeks protection from the rigors of a competitive marketplace – an aversion to cost reductions and price discounts.  This action should be rejected as repugnant to the laws it invokes.  It should be dismissed with prejudice, and the parties should be allowed to take their struggle for customers to the marketplace where it belongs.

## CONCLUSION

Honeywell respectfully submits that this Court should grant its Motion to Dismiss, and dismiss the Complaint in its entirety with prejudice.

Dated: January 7, 2015

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:     /s/ *William Pietragallo, II*
    William Pietragallo, II  (Pa. ID No. 16413)
    The Thirty-Eighth Floor
    One Oxford Centre
    Pittsburgh, PA 15219
    (412) 263-2000
    wp@pietragallo.com

William C. McLeod (admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007
(202) 342-8400
wmacleod@kelleydrye.com

Alison L. MacGregor (admitted *pro hac vice*)
Sung W. Kim  (admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212) 808-7800
amacagregor@kelleydrye.com
sukim@kelleydrye.com

*Attorneys for Defendant Honeywell*
*International Inc.*